# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 13 CR 463-2 |
| v. | ) | |
| | ) | Judge Thomas M. Durkin |
| ROBERT D. LATTAS | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Robert D. Lattas has filed his third motion for relief under 18 U.S.C. § 3582 in the face of the COVID-19 pandemic. R. 388. For the following reasons, Mr. Lattas's motion is denied.

## Background

The Court sentenced Mr. Lattas to 84 months' imprisonment for his role in an extensive mortgage fraud scheme. That sentence, which was well below the Sentencing Guidelines range of 135-168 months, was to run concurrently with the 63-month sentence he received for his role in a separate mortgage fraud scheme to which he pled guilty in *United States v. Lattas*, No. 14 CR 287 (N.D. Ill.) (the "2014 Case"). Mr. Lattas is housed at the minimum-security satellite camp adjacent to FCI Terre Haute, and has served approximately 25 months of his sentence. The Bureau of Prisons ("BOP") website calculates his release date as May 22, 2023.

This Court denied Mr. Lattas's initial motion under 18 U.S.C. § 3582(c)(1)(A)(i) for sentence reduction and judicial recommendation to the BOP for transfer to home confinement because Mr. Lattas had not exhausted his administrative remedies. R.

348. In so doing, the Court also noted that there was no indication of the severity or effect on Mr. Lattas's health of the asthma and/or obesity that he offered to justify his motion. R. 348. The Court nevertheless recommended that the BOP grant Mr. Lattas temporary release to home confinement via furlough under 18 U.S.C. § 3622 until such time as the COVID-19 crisis abated or a vaccine became available. *Id.*

The BOP did not accept the Court's furlough recommendation, so Mr. Lattas renewed his request to this Court after exhausting his administrative remedies. In so doing, Mr. Lattas sought a sentence reduction to either: (1) 63 months to match his sentence in the 2014 Case, making him eligible for home confinement in February 2021 under the Attorney General's then-current guidance; or (2) 44 months, which but for his sentence in the 2014 Case would have made him eligible for home confinement immediately. R. 361. This time, the Court granted Mr. Lattas's motion to the extent he sought a sentence reduction to 63 months (the "Reduction Order"). R. 361. The Reduction Order was based on the most recent CDC guidance that obesity—as opposed to only severe obesity—places an individual at an increased risk for severe illness from COVID-19, and the Government's concession that Mr. Lattas was obese and thus presented an "extraordinary and compelling reason" for release under 18 U.S.C. § 3582(c)(1)(A)(i). *Id.* The Court also held that the Section 3553(a) factors counseled in favor of the reduction because Mr. Lattas is neither a danger to the community nor a flight risk, and "21 months of additional sentencing is not required to satisfy the goals of sentencing." *Id.* at 3. The Court again urged the BOP to consider Mr. Lattas for furlough. *Id.* at 4.

2

Mr. Lattas subsequently filed a motion to reconsider the Reduction Order, again seeking a reduction to 44 months' imprisonment. In support, Mr. Lattas pointed out that: (1) the BOP had again denied him furlough; (2) FCI Terre Haute had not been performing enough COVID-19 tests and cases were thus underreported; (3) the number of positive COVID-19 cases in Indiana and across the BOP generally was increasing; (4) executions had commenced at FCI Terre Haute and the conditions of confinement had worsened as a result; and (5) Mr. Lattas had not seen his family and friends for months.

Ultimately, the Court denied Mr. Lattas's motion to reconsider, including because such a reduction would result in a sentence below that of his co-defendants, one of whom pled guilty and accepted responsibility for his actions, and the other of whom was involved in fewer transactions and unlike Mr. Lattas had not perjured himself on the stand. The Court noted that it also had previously considered everything in between the 44- and 63-month sentence reductions proposed by Mr. Lattas, and that a reduction to 63 months "but not more" was appropriate.

The Court noted that the increasing cases and under-testing and reporting Mr. Lattas cited did not impact matters, as the Court had considered both in reducing Mr. Lattas's sentence. *See* R. 361 at 4. Nor was the Court moved by Mr. Lattas's inability to visit with family and friends; the entire country had been on some form of lockdown or visiting restriction. And the Court held that to further reduce Mr. Lattas's sentence because the BOP had again declined to place him on furlough would effectively circumvent the exclusive authority of the BOP on the issue.

The Court did find troubling Mr. Lattas's allegations regarding the conditions during recent executions at the facility, but was heartened by Camp Administrator Todd Moyer's representation that future executions would be handled better.[1] Finally, and of particular relevance here, the Court noted that even if it were to further reduce Mr. Lattas's sentence, there is no guarantee that both: (1) Mr. Lattas would obtain a sentence reduction (commensurate or otherwise) in the 2014 case;[2] and (2) the BOP would release him to home confinement.

Now, Mr. Lattas again moves for relief under 18 U.S.C. § 3582, this time asking the Court to reduce his sentence to time-served with ten months' home confinement and mandatory enrollment in a drug and alcohol class. R. 388 at 1.

## Standard

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a term of imprisonment upon a motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal" and 30 days have passed without the BOP filing a motion on the defendant's behalf. In determining whether a sentence reduction under § 3582 is appropriate, courts consider: (1) the factors set forth in 18 U.S.C. § 3553(a); (2) whether "extraordinary and compelling reasons" warrant a reduction in sentence; and (3) whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The defendant

---

[1] Mr. Lattas does not complain about the conditions during executions in his most recent filings.

[2] Mr. Lattas moved for compassionate release in the 2014 case in July 2020. That motion remains pending.

bears the burden of establishing his entitlement to relief under this provision. *See United States v. Gold*, 459 F. Supp. 3d 1117, 1119 (N.D. Ill. 2020) (citing *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020)).

## Analysis

As noted, Mr. Lattas exhausted his administrative remedies, and the Court already determined that Mr. Lattas had an extraordinary and compelling reason for relief (his obesity), and that the Section 3553(a) factors warranted a sentence reduction from 84 to 63 months' imprisonment. But rather than couching his arguments in the context of the standard above, Mr. Lattas's most recent motion focuses on the inequities of his continued incarceration—at least as he perceives them.

Mr. Lattas's principal complaint seems to center around the idea that the Court's earlier reduction of his sentence to 63 months was in part because he would then be eligible for consideration for home confinement in February 2021 under the Attorney General's guidance. Mr. Lattas argues that because BOP policy now requires inmates to be at least 60 years old in order to be considered for such relief, at just 44 years old he no longer is eligible, so a sentence reduction to time served with a period of home confinement is appropriate. R. 388 at 2-3. But the problem for Mr. Lattas is that the Reduction Order was not contingent upon his release by the BOP to home confinement; instead, the Court based its decision on an assessment of Mr. Lattas's health risks against the Section 3553(a) factors. And the reduction was

"to match his sentence in the 2014 Case."[3] R. 361 at 4. In fact, and as noted, the Court has expressly contemplated that Mr. Lattas's release to home confinement was *not* guaranteed. *See* R. 383 at 5 (noting that even if this Court were to further reduce his sentence, "there is no guarantee that . . . the BOP would release him to home confinement"). In short, the change in BOP policy does not move the needle.

Mr. Lattas also points out that he was recently accepted into a nine-month Residential Drug Abuse Program ("RDAP"), and has been designated to complete that program at the federal prison camp located in Yankton, South Dakota. Successful completion of RDAP would reduce Mr. Lattas's sentence by twelve months. But due to pandemic-related restrictions on prison transfers, it likely will be some time before he can transfer and begin that program. The Court sympathizes with Mr. Lattas over this predicament. But it is not a basis for release. The Court's decision at sentencing was in no way influenced by Mr. Lattas's potential acceptance into, or rejection from, an RDAP. In fact, the Court set Mr. Lattas's sentence before his counsel brought up the possibility that it might also recommend his participation in such a program. Further, Mr. Lattas has not directed the Court to any authority indicating that delayed participation in RDAP could serve as a basis for a sentence reduction under Section 3582.

Mr. Lattas next points to *United States v. Morgan*, 2020 WL 6393007 (N.D. Ill. Nov. 2, 2020), in which the court granted the defendant precisely what Mr. Lattas

---

[3] To be clear, if the sentence in the 2014 Case is reduced, that is not a basis to further reduce the sentence in this case.

seeks here. That is, a sentence reduction to time served with the requirement that he serve the first 24 months of his supervised release on home detention. *Morgan*, 2020 WL 6393007, at *3. The defendant in *Morgan* also was housed in FCI Terre Haute and the court's decision was based in part upon the facility's COVID-19 infection rate. But that is where the similarities end. While both Mr. Lattas and the defendant in *Morgan* have suffered or do suffer from obesity and sleep apnea, of those two conditions, only obesity is recognized by the CDC as a condition that places an individual at an increased risk for severe illness from COVID-19. And not only was the defendant in *Morgan* morbidly obese, but also he suffers from Type 2 diabetes, another condition recognized as placing an individual at increased risk for severe illness.

     Despite Mr. Lattas's urging, nor does the Court find the *Morgan* defendant's crimes to be more serious than his own. *Morgan* involved a conspiracy to distribute narcotics. The court determined "the required ten-year prison sentence was more than necessary to account for [the defendant's] relative culpability and impose just punishment." *Morgan*, 2020 WL 6393007, at *3. Indeed, the court found that the defendant was "significantly less involved in the day-to-day operation of the drug business than his co-defendants," and expressly stated that it would have sentenced him to less than half of the mandatory minimum at the outset if permitted. *Id.* In contrast, Mr. Lattas was an instrumental part of a serious and extensive mortgage fraud scheme in which he knowingly facilitated and structured fraudulent

7

transactions affecting 29 properties in Englewood, a south side Chicago neighborhood.

Moreover, unlike Morgan, Mr. Lattas's sentence was not the product of a mandatory minimum. Indeed, Lattas's sentence was well below the Sentencing Guidelines range. And *this Court has already further reduced that sentence.*

Nevertheless, Mr. Lattas argues that unlike the defendant's crime in *Morgan*, his offense "does not have the widespread negative impact on communities." R. 394 at 5. But that argument borders on frivolous and demonstrates that Mr. Lattas lacks an understanding of the seriousness of his crimes. As the Court recognized at sentencing, when the mortgage loans Mr. Lattas facilitated ultimately were defaulted upon, the properties were foreclosed. The homes were then boarded up as a result, undoubtedly driving neighborhood property values down and crime up in a neighborhood already riddled with gangs, narcotics, and poverty. Mr. Lattas was not selling drugs, but his actions helped create an environment where it was easier to do so; his harm to the neighborhood was simply on a grander scale. In addition, Mr. Lattas's actions resulted in a loss amount of over $6.7 million (and over $19 million when combined with his separate mortgage fraud scheme in the 2014 case). The seriousness of Mr. Lattas's actions cannot be overstated. And they are made significantly worse by the fact that Mr. Lattas is a lawyer, and admitted at sentencing to having lied on the witness stand at trial. Mr. Lattas's reduced sentence remains

8

appropriate, all the more so now that Mr. Lattas's continues to harbor a belief that his crimes were not serious. *Morgan* does not counsel otherwise.[4]

Other than these perceived inequities, Mr. Lattas makes only arguments that the Court considered previously. That is, that: (1) infection rates remain high at FCI Terre Haute;[5] (2) the BOP declined to accept this Court's recommendation to place him on furlough; and (3) the conditions of confinement make it difficult to fully adhere to social distancing protocols. But the Court considered these arguments before, and remains convinced that the sentence reduction already made was and still is appropriate.

## Conclusion

In sum, this Court already analyzed Mr. Lattas's health risks and the sentencing factors in the face of the COVID-19 pandemic and determined that a reduction to 63 months' imprisonment, but not more, was warranted. Mr. Lattas's most recent motion essentially amounts to a second motion to reconsider this Court's Reduction Order, and presents nothing to convince the Court that it was incorrect.

---

[4] In Mr. Lattas's opening brief, which he filed *pro se*, he also argues that *United States v. Bausley*, No. 13 CR 617-2, R. 216 (N.D. Ill. Aug. 27, 2020) counsels in favor of the requested relief. But *Bausley* is not comparable. Like Mr. Lattas, the defendant in *Bausley* also was housed at Terre Haute and this Court determined that he was not a danger to the community. But among other differences, he had served significantly more of his sentence (65% as compared to Mr. Lattas's roughly 30% of his original sentence), and suffered from Still's disease, a rare and serious condition for which he previously had been hospitalized for weeks during his incarceration.

[5] As of this writing, there are five current cases amongst inmates at FCI Terre Haute, and nineteen current cases amongst FCI Terre Haute staff. *See* bop.gov/coronavirus (last visited Jan. 11, 2021). Additionally, the BOP reports that two inmates have died during the course of the pandemic, and that 422 inmates and 93 staff members have contracted the virus and recovered. *Id.*

Accordingly, while the Court continues to recommend that Mr. Lattas be placed on furlough under 18 U.S.C. § 3622, Mr. Lattas's motion for sentence reduction to time-served with home confinement as a condition of release, R. 388, is denied. For the sake of clarity, the Court notes that any failure by the BOP to place Mr. Lattas on furlough shall not serve as a basis for another motion for sentence reduction.

                                            ENTERED:

                                            *Thomas M. Durkin*

                                            _____

                                            Honorable Thomas M. Durkin
                                            United States District Judge

Dated: January 11, 2021